IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2018 Session

## IN RE RUGER N.[1]

**Appeal from the Chancery Court for Polk County**
**No. 2015-CV-9     Lawrence Howard Puckett, Judge[2]**

---

### No. E2017-01379-COA-R3-PT

---

This action involves the termination of a father's parental rights to his minor child. Following a bench trial, the court found that clear and convincing evidence existed to support the statutory grounds of abandonment for failure to support and to visit. The court further found that termination was in the best interest of the child. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, Jr., J. and D. MICHAEL SWINEY, C.J., joined.

J. Abigail Burke Carroll, Cleveland, Tennessee, for the appellant, Thomas N., Jr.

Nicholas C. Stevens, Chattanooga, Tennessee, for the appellees, Derek A. and Starr A.

### OPINION

### I.     BACKGROUND

Ruger N. ("the Child") was born to Starr A. ("Mother") and Thomas N. ("Father") in May 2011. Mother and Father (collectively "the Parents") never married; however, Father was listed on the birth certificate and acknowledged the Child as his biological son. The Parents lived together for a few months following the Child's birth until their separation three or four months later. Mother and the Child lived with the maternal

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

[2] Sitting by interchange.

grandfather ("Grandfather"). The Parents and their families live in the small Farner community in Polk County.

Father saw Mother and the Child on occasion throughout town, and he also saw the Child on occasion when he came by Grandfather's house "every now and again" to negotiate trades of items, e.g., pocketknives and fishing poles. In June 2012, the Parents negotiated an agreement pertaining to visitation and child support, providing that Father was permitted visitation every other weekend and could also visit the Child at Grandfather's residence any time throughout the week or weekend as long as he called ahead of time. Father also agreed to remit child support in the amount of $50 per week. Father exercised visitation on one occasion in June 2012 and remitted two payments of support, totaling $100.

Mother married Derek A. ("Stepfather") in May 2014 following an approximate two-year relationship. Stepfather is gainfully employed, and he and Mother volunteer at their local church. Stepfather enjoys a fatherly relationship with the Child and cares for him as his own child. Mother and Stepfather ("the Petitioners") filed a petition to terminate Father's parental rights on April 8, 2015, alleging abandonment for failure to visit and to support as statutory grounds supporting their request for termination.

Father, who had also married and fathered another child, objected and filed a petition to legitimate the Child during the pendency of the proceedings. The case proceeded to a hearing on the termination petition, at which Father conceded that he had not engaged in formal visitation in the four months preceding the filing of the termination petition and that he had also not remitted child support in the same time period.

Relative to child support, Father testified that he maintained periods of employment with the Tennessee Valley Authority in 2014 and 2015 and that he made approximately $21 per hour in addition to overtime and double-time. He acknowledged his duty to remit support and his failure to remit support. He further admitted that he was "making good enough money to support [the Child]." He explained that he did not remit support because Mother refused his requests for visitation. He stated that Grandfather offered to schedule a visit at one point but that the Child was gone when he arrived at the agreed time. He conceded that his requests for visitation were made within a days' notice and that he simply asked "when would be a good time for me to come see him." He claimed that he was never told when would be a good time.

Father testified that Mother obtained an order of protection against him in 2012 and that he was unsure how to maintain visitation once he was prohibited from contacting Mother. He claimed that the judge issuing the order advised him to first file a petition to legitimatize the Child. He requested assistance from the Child Support Services Office in

Cleveland and the Court Clerk's Office in Polk County, but he did not understand how to proceed. He agreed that he had sufficient funds at that time to secure legal assistance but claimed that he did not know anything about attorneys. He provided that he saw the Child "out in the community" on Christmas in 2014 and gave him presents. He agreed that he declined Mother's invitations to events where the Child would be present because he felt uncomfortable around certain people expected to attend.

Stepfather testified concerning his loving relationship with the Child and his willingness to adopt and support the Child. Mother confirmed the loving relationship between the Child and Stepfather. She further testified that Father had not engaged in formal visitation since June 2012 on Father's Day. She admitted that Father saw the Child on occasion while they were in town. She stated that the Child knows Father as someone who brought him a surprise one time.

The trial court granted the termination petition, finding that Father abandoned the Child by failing to remit support and to visit. The court further found that termination was in the best interest of the Child. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

B.    Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

C.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a

parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.  DISCUSSION

### A. & B.

In terminating Father's parental rights based upon the statutory ground of abandonment for failure to visit and remit support, the court considered the four months preceding April 8, 2015, the filing date of the termination petition. The relevant time period was December 8, 2014, through April 7, 2015.[3]

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). A parent's willful failure to visit "means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an

---

[3] "The applicable four month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

This court has consistently held that the term willfulness as it applies to a party's failure to visit or remit support must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

1.

Father claims that the court relied on clearly erroneous facts in making its determination that he failed to visit during the pertinent time period. He provides that the court found that he had "no contact or visitation" and had not requested any contact or visitation during the requisite time period, despite testimony establishing that he met with the Child in December 2014 and that his further requests for visitation were denied. The Petitioners admit that the Child may have had a "brief encounter" with Father while at the grocery store but claim that he refused her offers of visitation at Grandfather's house.

The Supreme Court has held that "a parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *In re A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *Swanson*, 2 S.W.3d at 189). However, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) (citation omitted) (upholding termination when the father did not take court action to secure visitation like the parents in *In re A.M.H.*).

The record reflects that visitation was offered in this case but that Father refused the conditions because he felt uncomfortable. He also only offered a days' notice when requesting a suitable time to see the Child. While we acknowledge that he saw the Child "out in the community," the record confirms that these visits were token in nature. Father simply failed to pursue his parental rights and cannot now claim that his minimal efforts were thwarted by the acts of others. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Father abandoned the Child by failing to visit during the requisite time period.

2.

Father claims that the finding of termination for failure to support should be reversed because the court failed to issue an oral or writing finding establishing that Father was capable of remitting support.[4] The Petitioners respond that the court made sufficient findings based on the evidence in the record.

In termination proceedings, the court is required to "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." Tenn. Code Ann. § 36-1-113(k). "Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making." *In re Audrey S.*, 182 S.W.3d at 861 (citing *In re Swanson*, 2 S.W.3d at 188). A mere recital of the statutory grounds for termination is insufficient in cases of this nature. Requiring trial courts to issue "specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals." *Id.*

"'Failure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.'" *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). Here, Father admitted at the hearing that he had a duty to remit support, that he had the capacity to remit support, and that he failed to remit support. His only excuse for his failure to remit support was that Mother refused his request for visitation. "The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially." *In re Audrey S.*, 182 S.W.3d at 864 (citations omitted).

Accordingly, the trial court held that Father willfully failed to remit support during the relevant time period and had only made two payments of support, totaling $100, during the entirety of the Child's lifetime. This finding was sufficient to facilitate appellate review and promote a just and speedy resolution of appeals. With all of the above considerations in mind, we conclude that there was clear and convincing evidence

---

[4] He likewise questions the court's ultimate decision based upon the court's statement that it was "struggling" with the findings necessary to sustain the petition. Our review of the record reveals that the court expressed reluctance in terminating a biological parent's rights when such a decision would result in less financial support for the Child. The court further noted that the factors listed in the best interest analysis were more applicable in cases where a child had been removed, not in a step-parent adoption case. However, the court then unequivocally ruled that it found clear and convincing evidence to support each ground of termination presented and that termination was in the best interest of the Child.

to establish that Father abandoned the Child by failing to remit support during the requisite time period.

C.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground to terminate Father's parental rights, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i)      In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
>> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>>
>> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[5]
>>
>> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>>
>> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>>
>> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>>
>> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

---

[5] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Father again challenges the court's findings of fact and takes issue with the court's application of Factor 5 when Mother testified that Father's inclusion in the Child's life would not have an impact because the Child "would look at it as a friend stopping by, that type of thing." Despite Father's claim, the court issued sufficient findings of fact before concluding that termination was in the best interest of the Child. Further, the court was not required to credit Mother's testimony on the application of Factor 5 given the totality of the evidence presented. We agree with the court's findings that Father had not maintained regular visitation; that no meaningful relationship had been established between them; that introducing him into the Child's life would disrupt the Child's placement with the Petitioners and would be detrimental; and that Father failed to remit child support. Tenn. Code Ann. § 36-1-113(i)(3)-(5), and (9).

While we do not wish to discount Father's love for the Child, there is simply no relationship between them. The Child is in need of permanency and a stable home that Father has not attempted to provide. With all of the above considerations in mind, we

conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the decision of the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Thomas N., Jr.

_____
JOHN W. McCLARTY, JUDGE